UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00078-GNS

ESTATE OF CHRISTOPHER THOMAS,
by and through AMY THOMAS, ADMINISTRATRIX                    PLAINTIFF

v.

UNITED STATES OF AMERICA                                      DEFENDANT

### **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 5). The motion is ripe for adjudication.

### I.  **STATEMENT OF FACTS AND CLAIMS**

This case arises from an accident at Bailey's Point Campground ("Bailey's Point") on Barren River Lake in Allen County, Kentucky, which is maintained and operated by the United States Army Corps of Engineers ("USACE"). (Compl. ¶¶ 1, 3, DN 1). Christopher Thomas ("Thomas") was camping with his wife at Bailey's Point in October 2020. (Compl. ¶ 2). They paid $75 to USACE to reserve their campsite in the campground's E loop for three nights. (Compl. ¶ 7). On Thomas's first night at Bailey's Point, he decided to drive his truck from his campsite in the E loop to the B loop to visit friends. (Compl. ¶ 9). He parked his truck in a paved area near the washhouse. (Compl. ¶¶ 9-10). As Thomas walked towards his friends' campsite, he tripped and fell over a tree stump. (Compl. ¶¶ 10, 14).

Thomas allegedly fell forward, injuring his face, his arms and, as later discovered, neck. (Compl. ¶¶ 14-20). Emergency services responded to the accident, but Thomas declined transportation to a hospital because he was not aware of the extent of his injuries. (Compl. ¶ 17).

1

Days later, Thomas remained "unable to grip or hold anything with either hand and continued to feel numbness and tingling in each hand." (Compl. ¶ 18). He was eventually diagnosed with a severe neck injury and underwent surgery. (Compl. ¶¶ 19-22). Thomas was allegedly severely disabled by his neck injury. (Compl. ¶ 24).

At the time of the accident, USACE had contracted with Barren River Lawn and Tree, LLC ("BRL&T") to perform "tree and stump removal" at Bailey's Point. (Compl. ¶ 47). BRL&T, however, had allegedly been "administratively dissolved" and "lacked valid licensure or bonding . . . ." (Compl. ¶ 48). The contract between USACE and BRL&T specified that "[a]ll trees requiring complete removal . . . should be cut to within 3-4[] [inches] of the ground." (Compl. 6). The top of the stump Thomas tripped over was allegedly more than 3-4 inches from the ground. (Compl. ¶ 12).

Thomas sued the United States for its alleged role in the accident, alleging that USACE failed to maintain its premises, failed to warn him of the dangerous condition caused by the tree stump, and was negligent in its hiring and supervision of the contractor who performed tree removal at Bailey's point. (Compl. ¶¶ 28-53). Thomas died following the commencement of his suit, and the Estate of Christopher Thomas ("Plaintiff") was substituted as a party. (Pl.'s Mot. Substitute Party, DN 12; Order, DN 16). The United States has moved to dismiss the claims against it pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Def.'s Mot. Dismiss 1, 3-4, DN 5).

## II.    STANDARD OF REVIEW

Generally, threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should be decided before any ruling on the merits under Fed. R. Civ. P. 12(b)(6). *See Bell v. Hood*, 327 U.S. 678, 682 (1946).

A defendant may challenge subject matter jurisdiction through a facial or factual attack. Facial attacks challenge the establishment of jurisdiction asserted in the complaint. *See United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). Factual attacks contest the existence of factual prerequisites to jurisdiction. *See id.* In such motions, the district court is empowered to resolve the factual disputes affecting any jurisdictional prerequisites. *See Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). A plaintiff bears the burden in both these situations. *See Bell*, 327 U.S. at 682. In this instance, the United States' motion "is presented as both a facial and factual attack." (Def.'s Mot. Dismiss 3).

When considering a Rule 12(b)(6) motion, a court "must construe the complaint in the light most favorable to [the] plaintiff[] . . . ." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted). A court must also accept all of a plaintiff's allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this standard is satisfied when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

### III.     DISCUSSION

Sovereign immunity may serve as a basis for a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted). Sovereign immunity is a jurisdictional issue—a court has no jurisdiction over a suit against the United States unless the United States has consented to be sued. *Id.* (citing *United States v. Sherwood*, 312 U.S.

584, 586 (1941); *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). The Federal Tort Claims Act ("FTCA") "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Millbrook v. United States*, 569 U.S. 50, 52 (2013) (citing *Levin v. United States*, 568 U.S. 503, 506 (2013)). "The [FTCA] gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." *Levin*, 568 U.S. at 506 (citing 28 U.S.C. § 1346(b)(1)). "The waiver grants exclusive jurisdiction to the district courts to hear such claims, provided, however, that 'the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Mynatt v. United States*, 45 F.4th 889, 895 (6th Cir. 2022) (quoting 28 U.S.C. § 1346(b)(1)).

"The FTCA's waiver of immunity is limited, and contains a series of exceptions." *Kohl v. United States*, 699 F.3d 935, 939 (6th Cir. 2012) (citing 28 U.S.C. § 2680). If a claim falls under any of these exceptions, "then federal courts lack subject-matter jurisdiction, and the claim must be dismissed." *Id.* at 940 (citing *Feyers v. United States*, 749 F.2d 1222, 1225 (6th Cir. 1984)). In this instance, the United States argues that the conduct alleged by in the Complaint falls under the "discretionary function" and the "independent contractor" exceptions to the FTCA's waiver of sovereign immunity. (Def.'s Mot. Dismiss 8, 11-18).

The FTCA contains an exception for "claims relating to the discretionary aspects of a federal employee's conduct." *Mynatt*, 45 F.4th at 895. Under this discretionary function exception, the government is not liable for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal

4

agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). The exception applies only to "acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice,' and 'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal citations omitted) (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 (1984)). "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *Id.* (quoting *Berkovitz*, 486 U.S. at 536).

Application of the discretionary function exception turns on the two-part test outlined in *Gaubert*. *Gaubert*, 499 U.S. at 322-23; *Abbott v. United States*, 78 F.4th 887, 900 (6th Cir. 2023). "[T]he government is entitled to sovereign immunity [under the discretionary-function exception] only if the complained-of actions are *both* discretionary and of the type the exception was designed to protect. If the actions are either non-discretionary or discretionary but unprotected, the government is not entitled to sovereign immunity." *Abbott*, 78 F.4th at 900 (quoting *Mynatt*, 45 F.4th at 896).

First, a court must determine whether the function being performed was truly discretionary. *Kohl*, 699 F.3d at 935. No discretion exists where "the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice." *Id.* (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). On the other hand, "[i]f there is 'room for judgment or choice in the decision made,' the complained-of conduct is discretionary." *Mynatt*, 45 F.4th at 896 (quoting *Kohl*, 699 F.3d at 940).

Second, if a court determines that the function being performed was truly discretionary, it must then ask "whether the conduct is 'of the kind that the discretionary function exception was designed to shield.'" *Rosebush*, 119 F.3d at 441 (quoting *Gaubert*, 499 U.S. at 322-23). The discretionary function exception was enacted to prevent the judiciary from second-guessing through tort actions decisions of government employees rooted in "social, economic, and political policy . . . ." *Abbott*, 78 F.4th at 903 (quoting *Kohl*, 699 F.3d at 940). The exception's protection extends far beyond high-level policy decisions and shields even government action taken on a "day-to-day operational level" if that action "involves choice or judgment that is 'susceptible to policy analysis' . . . ." *Kohl*, 699 F.3d at 940 (quoting *Gaubert*, 499 U.S. at 325). The Sixth Circuit presumes that when "established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a [g]overnment agent to exercise discretion, . . . the agent's acts are grounded in policy when exercising that discretion." *Id.* (quoting *Sharp ex rel. Est. of Sharp v. United States*, 401 F.3d 440, 443 (6th Cir. 2005)).

At the outset of this analysis, a court must "determine exactly what conduct is at issue, prior to considering the discretionary function factors." *Snyder v. United States*, 590 F. App'x 505, 509 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Rosebush*, 119 F.3d at 441). Plaintiff brings three negligence claims against USACE based upon its: (i) failure to make Bailey's Point safe for its invitees; (ii) failure to warn of the hazardous condition created by the stump; and (iii) negligent hiring and supervision of BRL&T. (Compl. ¶¶ 28-53; Pl.'s Resp. Def.'s Mot. Dismiss 2-3, DN 13). Thus, the conduct at issue is USACE's maintenance of the area around the washhouse, USACE's failure to warn of the hazard, and USACE's hiring and supervision of BRL&T.

A.     **Failure to Maintain; Failure to Warn**

Plaintiff's first and second claims are that USACE was negligent in failing to maintain the premises at Bailey's Point and in failing to warn Thomas of the dangerous tree stump. (Compl. ¶¶ 28-45). Specifically, the Complaint asserts that "[t]he United States, by and through its agents and contractors, negligently failed to remove, mark, or otherwise address a dangerous tree stump that was left on the edge of a highly trafficked pedestrian-use area, on the top of a large downward-sloping hill[,]" and that "[t]he United States knew or should have known of the hazard and failed to place any warning signs, cones, paint markings, illumination or other safety measures around the hazard." (Compl. ¶¶ 33, 42). The United States responds that maintenance of the area where Thomas fell is discretionary because no policy requires the removal of trees, mandates the manner of removal, or requires the posting of a warning and that the "discretion afforded is susceptible to policy analysis." (Def.'s Mot. Dismiss 12, 15). Plaintiff disagrees with the United States and points to three different "policies" which it argues remove discretion from USACE. Each policy, however, leaves significant discretion and therefore does not defeat the discretionary function exception.

First, Plaintiff argues that the contract between USACE and BRL&T, read in concert with certain provisions of the Federal Acquisition Regulations ("FAR"), leaves USACE no discretion regarding the height of tree stumps at Bailey's Point. Under FAR, "[c]ontracting officers are responsible for . . . ensuring compliance with the terms of the contract . . . ." 48 C.F.R. § 1.602-2. Further, "agencies shall ensure that . . . services (including commercial services) tendered by contractors meet contract requirements" and "nonconforming . . . services are rejected . . . ." 48 C.F.R. § 46.102(b), (e). Finally, FAR states that a contracting officer "should reject . . . services not conforming in all respects to contract requirements (see 46.102). In those instances where

7

deviation from this policy is found to be in the Government's interest, such . . . services may be accepted only as authorized in this section." 48 C.F.R. § 46.407(a).

Plaintiff asserts that these portions of FAR work together to transform discretionary contract language detailing how contractors should perform work for the federal government into a mandate that binds the federal government itself. (Pl.'s Resp. Def.'s Mot. Dismiss 6-8). According to Plaintiff, because USACE hired BRL&T to perform the work and specified in the contract that the stumps were to be three to four inches from the ground, USACE now has no discretion regarding stump height. (Pl.'s Resp. Def.'s Mot. Dismiss 8-9). Plaintiff cites no case directly supporting this contention, nor did this Court locate any decisions within or beyond the Sixth Circuit reflecting this line of reasoning. Plaintiff contends that any agency that contracts with third parties to perform discretionary functions becomes bound by the terms of that contract and is mandated to see that the contract is enforced. If USACE had foregone the contracting process and opted to perform the work itself, it would have discretion to leave the stumps at any height it wished. *Cf. Hatcher v. United States*, 855 F. Supp. 2d 728, 733 (E.D. Tenn. 2012) (finding that "inspection and maintenance decisions" regarding hazardous trees "are of the type Congress intended to protect though the discretionary function exception"). FAR does not create the type of regulation-by-contract that Plaintiff suggests; the purpose of FAR is to provide a clear framework for consistent contracting across federal agencies and to "deliver on a timely basis the best value product or service to the customer, while maintaining the public's trust and fulfilling public policy objectives." 48 C.F.R. § 1.102(a).

Plaintiff further disregards sections of the contract and FAR by suggesting that BRL&T held discretion regarding acceptable stump heights and that USACE had discretion to accept nonconforming services. The terms of the contract and the acceptance/rejection provisions of FAR

did not leave USACE with "no rightful option but to adhere to the directive." *Berkovitz*, 486 U.S. at 536. First, the contract itself states that "[a]all trees requiring complete removal . . . *should* be cut within 3-4" of the ground." (Def.'s Mot. Dismiss Ex. A, at 15, DN 5-1 (emphasis added)). The use of the word "should" in the contract indicates that BRL&T had some discretion as to the stumps. *See Hatcher*, 855 F. Supp. 2d at 732 (holding that "[t]he use of the word 'should,' instead of 'shall' or 'must'" in written Department of the Interior policy "left . . . discretion on whether to follow the suggestive language of [the policy]"). Second, the relevant portions of FAR also allow discretion to accept or reject nonconforming services. For example, the same section of FAR which Plaintiff asserts requires rejection of nonconforming services states that "[t]he contracting officer *ordinarily* must give the contractor an opportunity to correct or replace nonconforming supplies or services *when this can be accomplished* within the required delivery schedule." 48 C.F.R. § 46.407(b) (emphasis added). These terms reflect that USACE retained discretion to accept nonconforming services.

Moreover, as Plaintiff acknowledges, the same section includes guidelines recognizing exigencies in performance deficiencies:

> In situations not covered by paragraph (b) of this section, the contracting officer ordinarily must reject supplies or services when the nonconformance is critical or major or the supplies or services are otherwise incomplete. However, there may be circumstances (e.g., reasons of economy or urgency) when the contracting officer determines acceptance or conditional acceptance of supplies or services is in the best interest of the Government. The contracting officer must make this determination based upon—
> (i) Advice of the technical activity that the item is safe to use and will perform its intended purpose;
> (ii) Information regarding the nature and extent of the nonconformance or otherwise incomplete supplies or services;
> (iii) A request from the contractor for acceptance of the nonconforming or otherwise incomplete supplies or services (if feasible);
> (iv) A recommendation for acceptance, conditional acceptance, or rejection, with supporting rationale; and

>   (v)     The contract adjustment considered appropriate, including any adjustment offered by the contractor.

48 C.F.R. § 46.407(c)(1). By acknowledging that "there may be circumstances (e.g., reasons of economy or urgency) when the contracting officer determines acceptance or conditional acceptance of supplies or services is in the best interest of the Government[,]" the regulation provides the agency with discretion to make such an acceptance and sets forth factors requiring the exercise of discretion. Nothing in FAR creates a policy depriving USACE of discretion to waive strict compliance by BRL&T with the terms of its contract.

Second, Plaintiff points to a USACE engineering manual,[1] which purportedly removes discretion from USACE by prescribing "a specific course of conduct for safety-related issues." (Pl.'s Resp. Def.'s Mot. Dismiss 9). Specifically, Plaintiff cites to four sections which he claims removes discretion from USACE. (Pl.'s Resp. Def.'s Mot. Dismiss 10). These are:

>   2.11.4    Provide Adequate Lighting. Adequate lighting for safety, security, and accessibility shall be designed into all facilities and recreation areas when available at reasonable cost. This includes lighting access to buildings and major facilities.
>   . . .
>
>   2:14     Signs. Signs shall be provided only where needed to regulate traffic, warn of hazardous conditions, establish restrictions, and provide information. The number of signs should be kept at a minimum. Symbol signs shall be used whenever feasible.
>   . . .
>
>   7.3.1    Routine Evaluations. Routine daily reporting of project conditions shall be performed at the project level to ensure that high levels of customer service are maintained. Corps personnel, contractors, volunteers, or a combination thereof may accomplish this. Reporting methods normally used include a log or work order program. The routine evaluations shall facilitate timely identification and correction of safety problems, cleanup of areas and facilities, and accomplishment of minor maintenance and repairs.

---

[1] There is some dispute between the parties as to whether the Engineering Manual applies to the area where Thomas's accident occurred. (Def.'s Reply Mot. Dismiss 7 n.5, DN 19). For the sake of argument, the Court will assume it is applicable.

> 7.3.2    Annual Evaluations.  An in-house annual evaluation shall be conducted to verify the safety and functional operation of all recreation facilities.  A project level team consisting of managers, rangers, and maintenance and contract personnel should perform annual evaluations.  Use of peers from other areas is encouraged.  Evaluations shall include review of facilities, structures, roads, ramps, equipment, and utilities.  Safety-related deficiencies shall be corrected prior to opening the recreation area or facility for public use.

(Def.'s Reply Mot. Dismiss Ex. 1, §§ 2.11.4, 2.14, 7.3.1, 7.3.2, DN 19-1 [hereinafter Engineering Manual]).  As with FAR, the engineering manual contains standards for USACE to follow but does not remove all discretion.  In just these four sections referenced by Plaintiff, there is ample discretionary language.  In Section 2.11.4, the mandate that all facilities "shall" be designed with adequate lighting is subject to the caveat "when available at reasonable cost." Engineering Manual § 2.11.4.  While "shall" is mandatory, a determination of "reasonable cost" requires judgment.  Similarly, in Section 2.14, the mandate that signs "shall" be provided is modified by "only where needed to . . . warn of hazardous conditions . . . ."  Engineering Manual § 2.14.  Again, the mandatory language is limited by the discretionary determination concerning where a warning sign is "needed."

The sections mandating evaluations do not prescribe with certainty or specificity exactly how these evaluations are to be conducted.  Engineering Manual §§ 7.3.1, 7.3.2.  Courts have identified two types of mandatory inspections for the purposes of the discretionary function exception.  *Graves v. United States*, No. C23-18-LTS-KEM, 2024 WL 1051977, at *3 (N.D. Iowa Mar. 11, 2024).  One type details exactly how an inspection must be carried out and therefore leaves no discretion.  *Id.* ("When government inspectors are subject to precise regulations that mandate the specific steps they must take during their inspections, they are not acting with discretion." (citing *McMichael v. United States*, 856 F.2d 1026 (8th Cir. 1988))).  The other type of regulation mandates an inspection but does not specify the steps the inspector must take, leaving

11

the inspector with discretion, which is accordingly protected by the exception. *Id.* ("By contrast, if an inspection policy 'lacks language dictating mandatory steps' and 'simply identifies the target areas for investigation,' the inspector retains discretion such that the first step of the discretionary function exception applies." (quoting *Buckler v. United States*, 919 F.3d 1038, 1048 (8th Cir. 2019))). The evaluations required by the Engineering Manual are of the second type—the manual mandates that an inspection be performed but does not mandate specific steps to be followed.

Plaintiff also attempts to use the Engineering Manual to support its failure to warn claim. (Pl.'s Resp. Def.'s Mot. Dismiss 10). It suggests the signage provision does not allow for the use of discretion. (Pl.'s Resp. Def.'s Mot. Dismiss 10). Plaintiff's focus on the section's mandatory "shall" regarding warning signs completely ignores the clearly discretionary language that signs shall be provided "only where needed" with no standard for determining the location of signage. Engineering Manual § 2.14. This absence of specific instruction necessarily leaves USACE with discretion to erect or not erect a warning. *See Graves*, 2024 WL 1051977, at *5 ("Determining where signs are needed or when the placement of signs is feasible are both discretionary. Further, placement of signs to warn of 'hazardous conditions' again first requires a finding that a 'hazardous condition' exists, a determination which is as 'rooted in discretion' as the previously discussed 'safety-related deficiency' determination." (citing *Buckler*, 919 F.3d at 1049)). Accordingly, the manual also does not create a policy depriving USACE of discretion.

Third, Plaintiff points to a clause "regarding water resource development projects" as evidence that USACE lacks discretion. (Pl.'s Resp. Def.'s Mot. Dismiss 11). The regulation states that "[i]t is the policy of the Secretary of the Army, acting through the Chief of Engineers, to manage the natural, cultural and developed resources of each project in the public interest, providing the public with safe and healthful recreational opportunities while protecting and

12

enhancing these resources." 36 C.F.R. § 327.1(a). This broad policy statement does not take discretion from USACE. *See Hager v. United States*, No. 3:19-0673, 2020 WL 2544421, at *2-3 (S.D.W. Va. May 19, 2020) (examining 36 C.F.R. § 327.1(a) and concluding that "[b]oth by statute and regulation, USACE is given discretionary authority in deciding how best to meet its responsibility of managing land and water runoff while simultaneously providing recreational activities for the public"); *Navarrette v. United States*, No. C 04-00760 JSW, 2005 WL 1876057, at *5-6 (N.D. Cal. Aug. 8, 2005) (examining 36 C.F.R. § 327.1(a) and concluding that the regulation creates discretion protected by the FTCA); *Dunaway v. United States*, 136 F. Supp. 2d 576, 583 (E.D. La. 1999) (finding that 36 C.F.R. § 327.1(a) does not defeat the discretionary function exception because "the language of the regulation is devoid of specific directives prescribing the behavior of the Corps or its employees"). Accordingly, the regulation also does not create a policy under which USACE has no discretion.

Moving to the second element of the *Gaubert* test, courts have addressed maintenance of hazards on federal land as entailing discretion protected by the discretionary function exception, holding that maintenance and warning are clearly susceptible to policy considerations. *See Rosebush*, 119 F.3d at 443 ("Decisions concerning the proper response to hazards are protected from tort liability by the discretionary function exception." (citations omitted)); *see also Autery v. United States*, 992 F.2d 1523, 1530-31 (11th Cir. 1993); *Hatcher*, 855 F. Supp. 2d at 732-33; *Ferren v. United States*, No. 2:19-CV-00065-JRG-CRW, 2020 WL 13556137, at *3-4 (E.D. Tenn. June 8, 2020).

With respect to the failure to warn claim, Plaintiff correctly notes that the Sixth Circuit has suggested that not all failures to warn are protected by the FTCA, even when warning is discretionary. *See A.O. Smith Corp. v. United States*, 774 F.3d 359, 369 (6th Cir. 2014) (holding

13

that failure-to-warn claims do not "categorically satisfy" the discretionary function exemption). Instead, courts must analyze each failure-to-warn claim individually. *Id.* (citing *Graves v. United States*, 872 F.2d 133, 137 (6th Cir. 1989); *Reetz v. United States*, 224 F.3d 794, 796 (6th Cir. 2000)). Another court considering the same signage provision from the Engineering Manual argued by Plaintiff held that the decision to erect or not erect a warning sign was susceptible to policy analysis and therefore satisfied the second prong of the *Gaubert* test. *Graves*, 2024 WL 1051977, at *6-7. This case is squarely on point and supports the determination that USACE has met this second prong.

### B. Negligent Hiring and Supervision

Plaintiff also claims that USACE was negligent in hiring BRL&T to perform tree maintenance because BRL&T "did not exist" and "had been administratively dissolved by the Kentucky Secretary of State" at the time the contract was executed. (Pl.'s Resp. Def.'s Mot. Dismiss 13). Plaintiff's argument rests on another provision of FAR, which states that:

> No purchase or award shall be made unless the contracting officer makes an affirmative determination of responsibility. In the absence of information clearly indicating that the prospective contractor is responsible, the contracting officer shall make a determination of nonresponsibility. If the prospective contractor is a small business concern, the contracting officer shall comply with subpart 19.6, Certificates of Competency and Determinations of Responsibility.

(Pl.'s Resp. Def.'s Mot. Dismiss 13-14); 48 C.F.R. § 9.103(b). FAR enumerates seven requirements for a determination of responsibility:

> To be determined responsible, a prospective contractor must—
> (a)  Have adequate financial resources to perform the contract, or the ability to obtain them (see 9.104-3(a));
> (b)  Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing commercial and governmental business commitments;
> (c)  Have a satisfactory performance record (see 9.104-3(b) and subpart 42.15). A prospective contractor shall not be determined responsible or nonresponsible

14

    solely on the basis of a lack of relevant performance history, except as provided in 9.104-2;
(d)    Have a satisfactory record of integrity and business ethics (for example, see subpart 42.15);
(e)    Have the necessary organization, experience, accounting and operational controls, and technical skills, or the ability to obtain them (including, as appropriate, such elements as production control procedures, property control systems, quality assurance measures, and safety programs applicable to materials to be produced or services to be performed by the prospective contractor and subcontractors) (see 9.104-3(a));
(f)    Have the necessary production, construction, and technical equipment and facilities, or the ability to obtain them (see 9.104-3(a)); and
(g)    Be otherwise qualified and eligible to receive an award under applicable laws and regulations (see also inverted domestic corporation prohibition at 9.108).

48 C.F.R. § 9.104-1.

Generally, an agency's hiring and supervisory decisions are protected by the discretionary function exception.[2] *See Snyder*, 590 F. App'x at 510 (citing *O'Bryan v. Holy See*, 556 F.3d 361, 384 (6th Cir. 2009); *Carlyle v. U.S., Dep't of Army*, 674 F.2d 554, 556-57 (6th Cir. 1982); *Zion v. United States*, 913 F. Supp. 2d 379, 388-89 (W.D. Ky. 2012)). This includes decisions to hire independent contractors. *Berrien v. United States*, 711 F.3d 654, 661 (6th Cir. 2013) (finding that "the decision to hire a contractor . . . fall[s] squarely within" the discretionary function exception); *Gowdy v. United States*, 412 F.2d 525, 529 (6th Cir. 1969) ("In any event, the award of contracts by the Government involves a 'discretionary function or duty,' in the exercise of which it is exempt from liability under the Federal Tort Claims Act." (citations omitted)); *Hudson v. United States*, No. 2:06-CV-01, 2008 WL 517009, at *7 (E.D. Tenn. Feb. 25, 2008) (citing *Williams v. United States*, 50 F.3d 299, 309 (4th Cir. 1995); *Layton v. United States*, 984 F.2d 1496, 1501-02 (8th Cir. 1993)) (holding that the "selection and supervision of an independent contractor" falls within the

---

[2] Plaintiff does not appear to argue that USACE had no discretion in its supervision BRL&T, beyond those about FAR and the contract that are addressed above. (Pl.'s Resp. Def.'s Mot. Dismiss 13-14, 18).

discretionary function exception); *see also Zion*, 913 F. Supp. 2d at 388. "Even where there is a claim . . . that the contractor chosen is incompetent and the Government had knowledge of the alleged incompetency, the award of contracts by the Government is a discretionary function or duty, in the exercise of which it is exempt from liability under the [FTCA] . . . ." *Hudson*, 2008 WL 517009, at *7 (internal quotation marks omitted) (quoting *Gowdy*, 412 F.2d at 525-29).

In this instance, the hiring of BRL&T by USACE falls within the discretionary function exception. While USACE may have been negligent in its selection of a contractor which allegedly "did not exist" when the contract was executed, that does not defeat the protection of the discretionary function exception and open the United States to suit. *Id.* As to Plaintiff's reliance on FAR's hiring guidelines, other courts have rejected the contention that those guidelines create mandatory duties. *See Hamilton v. United States*, No. 19-1105 (RDM), 2021 WL 2809124, at *5 (D.D.C. July 6, 2021) (collecting cases). While FAR does impose some procedural requirements on agencies, those requirements "do no[t] eliminate all choice from the selection of federal contractors. Rather, when selecting a contractor within the FAR framework, a government agency is 'required to evaluate and weigh a plethora of factors' but still 'us[es] its overall judgment as to the final choice.'" *Id.* (quoting *Wood v. United States*, 290 F.3d 29, 38 (1st Cir. 2002)).

"To be sure, certain aspects of the FAR appear to create non-discretionary duties." *Id.* at *6. This includes the mandate that the contracting officer "make[] an affirmative determination of responsibility." 48 C.F.R. § 9.103(b); *Hamilton*, 2021 WL 2809124, at *5. Perhaps a complete failure to make such a determination could "constitute the negligent dereliction of a non-discretionary duty that could give rise to liability under the FTCA." *Hamilton*, 2021 WL 2809124, at *6. Plaintiff, however, does not allege in either it's the Complaint or its response to the United States' motion to dismiss that USACE failed to make such a determination. Plaintiff claims that

16

USACE "knew or should have known that Barren River Lawn & Tree, LLC was not legally authorized or competent to perform the contracted work[,]" that USACE "failed to properly vet, supervise, or monitor the contractor's performance," and that BRL&T "could not have been deemed 'responsible[,]'" but he does not allege that USACE failed to make the determination of responsibility altogether. (Compl. ¶¶ 49, 51; Pl.'s Resp. Def.'s Mot. Dismiss 13-14). While Plaintiff argues that because BRL&T did not exist, it could not have been deemed responsible, this argument goes to USACE's negligence in exercising its discretion, not the absence of discretion. Accordingly, the first prong of the *Gaubert* test is satisfied.

Moving to the second prong, USACE's decision to contract with BRL&T is the type of decision that the discretionary function exception is designed to protect. When deciding to hire a certain contractor for site maintenance, USACE weighed competing interests in economy and efficiency against concerns about the safety and adequate operation of Bailey's Point. *Zion*, 913 F. Supp. 2d at 388-89 (citing *O'Bryan*, 556 F.3d at 384). This decision necessarily included the evaluation of many factors, including budgetary constraints, public perception, economic conditions, experience, and intuition. *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1217 (D.C. Cir. 1997) (citing *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995)); *Berrien*, 711 F.3d at 661 (holding that the decision to hire a contractor was grounded in social, economic, and political policy). Accordingly, the discretionary function exception of the FTCA shields the United States from liability based on USACE's alleged negligence in hiring and supervising BRL&T.

Accordingly, the discretionary function exception of the FTCA shields the United States from liability on Plaintiff's claims, so that "the bar of sovereign immunity remains." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006). For this reason, Plaintiff's claims must be dismissed.

"Because this issue is dispositive, the court need not address the United States' alternative argument[s] . . . ."[3] *Hatcher*, 855 F. Supp. 2d at 733; *see also Hatcher v. United States*, 512 F. App'x 527, 530 (6th Cir. 2013) ("Like the district court, we will not reach the defendant's recreational-use alternative defense in light of the dispositive nature of the FTCA's discretionary-function exception.").

### IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 5) is **GRANTED** and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Judge
United States District Court
February 25, 2026

cc:  counsel of record

---

[3] Because the Court lacks subject matter jurisdiction over the claims asserted in the Complaint, it is unnecessary to address the United States' arguments about whether this pleading has failed to state a claim.